**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monique Louis,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Window Rock Unified School District,<br><br>　　　　　　Defendant. | No. CV-20-08193-PCT-DJH<br><br>**ORDER** |

Pending before the Court is Defendant Window Rock Unified School District's ("Defendant" or "District") Motion for Summary Judgment (Doc. 29). Plaintiff Monique Louis ("Plaintiff") filed a Response in Opposition (Doc. 36), and Defendant filed a Reply (Doc. 37).

**I.　Background**

This case concerns an employment discrimination dispute. (Doc. 29). In her Complaint, Plaintiff sues her former employer, Window Rock Unified School District ("District"), for violations of her Title VII rights "because of her sex" and because she was the "victim of reprisal." (Doc. 1 at ¶¶ 4, 26).

During her deposition, Plaintiff conceded she was not claiming discrimination because of her gender, age, ethnicity, or any other invidious classification. (Doc. 29-2 at 84). Defendant thus moved for summary judgment on her retaliation claim, arguing that there is no evidence that Plaintiff was discriminated against based on any protected classification or that the District treated her differently than a similarly-situated employee

who was not in the same protected class as her. (Doc. 29 at 6). In Response, Plaintiff raises a hostile work environment claim, arguing the District's School Board President Scott Tomlinson ("Mr. Tomlinson") committed sexual harassment against her when he sent her unwelcome text messages.[1] (Doc. 36 at 4–7). In its Reply, Defendant argues the Court should not consider Plaintiff's hostile work environment claim because it was not alleged in the Complaint, and it would be prejudicial to allow Plaintiff to raise a new "claim" in response to a summary judgment motion. (Doc. 37 at 2).

### A. Alleged Sexual Harassment from School Board President Tomlinson[2]

Plaintiff was a bookkeeper at Window Rock Unified School District ("District") from 2017 to 2018. (Doc. 29-2 at 31). In June of 2017, she began a consensual relationship with Mr. Tomlinson. (*Id.* at 33–34). The relationship ended in November of 2017. (*Id.* at 35). The parties agree that Plaintiff and Mr. Tomlinson did not work together, and Mr. Tomlinson did not supervise Plaintiff while she worked at the District. (Doc. 36 at 8).

The District's Human Resources Director is Ken Cooper. On January 23, 2018, Plaintiff received a text message from Mr. Tomlinson, stating "I just saw a pic of you and Ken Cooper kissing, wow just resign." (Doc. 36-2 at ¶ 3). Plaintiff interpreted this text to mean that if she kissed anyone other than Mr. Tomlinson, "she would be pressured to resign." (*Id.* at ¶ 4). She showed these texts to Mr. Cooper. (*Id.* at ¶ 5). Plaintiff did not file a complaint after she received Mr. Tomlinson's text, but Mr. Cooper did. (Doc. 37-2 at 3).

On February 16, 2018, the District's investigating counsel sent Plaintiff a letter informing her that Superintendent Lynnette Michalski ("Superintendent Michalski") and counsel had investigated the complaint that was raised on January 25, 2018, by Mr. Cooper. (Doc. 37-2 at 3). Counsel informed Plaintiff it was "determined [that] Mr. Tomlinson's conduct was inappropriate and in violation of Governing Board Policy." (*Id.*) Counsel also stated they had "met with Mr. Tomlinson, reviewed the applicable Board policies with

---

[1] Mr. Tomlinson is not a named defendant in this lawsuit.

[2] Unless otherwise noted, the following facts are not in dispute.

him, and [] provided him with [Counsel's] recommendations for his future conduct." (*Id.*) Counsel further stated, "[a]s to [Plaintiff], I have recommended that Mr. Tomlinson not have any contact with you in his personal or professional capacity, and that he recuse himself from voting on any personnel decisions pertaining to you." (*Id.*)

The following month, in March of 2018, Plaintiff and Mr. Tomlinson exchanged a series of texts about the Superintendent and Plaintiff's relationship with Mr. Cooper.[3] (Doc. 36-2 at 12). Mr. Tomlinson accused Plaintiff of "using [Mr. Tomlinson] for job reasons" while lamenting his "dumb ass was thinking love." (*Id.*) During this conversation, Mr. Tomlinson expressed continued affection for her, stating "I love you, no matter what…My heart, what I feel for you will never…" and "[o]k…well…I love you… My boys love you…" (*Id.* at 13). After several back-and-forth messages, Plaintiff told him she was done and not to contact her anymore. (*Id.* at 14). The text message thread, however, indicates the two kept texting. (*Id.* at 15–16). Plaintiff then filed a restraining order against Mr. Tomlinson but testified she could not remember when she filed it. (Doc. 29-2 at 42).

---

[3] Defendant objects to Plaintiff's declaration and the text messages attached thereto. (Doc. 37 at 3). Defendant argues the declaration violates the requirements of Rule 56(c)(4), which requires that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Defendant contends Plaintiff's declaration fails to establish Plaintiff has personal knowledge of the facts stated because "it is not written in the first person" and merely contains counsel's "cut-and-pasted statement of facts which Plaintiff has signed." (Doc. 37 at 3). Defendant further asserts the text messages are not authenticated and thus cannot be considered on summary judgment. (*Id.*) For these reasons, Defendant says Plaintiff's declaration and the text messages are inadmissible and should not be considered on summary judgment. (*Id.*)

The Court rejects both arguments. First, Defendant provides no authority to support its proposition that Plaintiff's declaration must be "written in first person" to comply with Rule 56(c)(4)'s personal knowledge requirement. The advisory comments to Rule 56(c)(4) state that declarations under penalty of perjury pursuant to 28 U.S.C.A. § 1746 are sufficient for a court to consider on summary judgment. Ms. Louis' declaration starts, "Monique Louis declares, under penalty of perjury" and contains her signature. (Doc. 36-2 at 1). The Court finds this sufficient. Second, as to the text messages, Plaintiff's declaration authenticated them because it specifically discussed the text messages. (*Id.* at ¶¶ 7–8); *see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir. 2002) ("A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so."). Plaintiff signed the declaration and identified and discussed the offered messages therein.

**B. The District's Alleged Retaliation**

Plaintiff states that "immediately" after providing Mr. Cooper with a copy of the January 23, 2018, text exchange with Mr. Tomlinson, "she was selected for a grant position" in addition to her full-time employment, with a start date of February 2, 2018. (Doc. 36-2 at ¶¶ 6, 11). Plaintiff states that when she started her new position her chair was covered with dog or cat hair, and she had to clean her work area. (*Id.* at ¶¶ 18–19). Plaintiff resigned from the grants position on February 26, 2018, explaining she was not doing what she had thought the job would entail. (Doc. 29-2 at 15–16).

Upon her resignation from the grant coordinator position, Plaintiff says Superintendent Michalski informed her that her original bookkeeper position would continue to be a part-time position for the next year. (Doc. 36-2 at ¶ 19). Plaintiff says Superintendent Michalski did not inform her of the reasons for making the bookkeeper position part-time, but confirmed during her deposition that Superintendent Michalski wanted Plaintiff to retain a full-time position, whether it was one full-time position or two part-time positions that equaled a full-time position. (Doc. 29-2 at 46). Plaintiff states that on July 5, 2018, "her position was eliminated and combined with the grant position." (Doc. 36-2 at ¶ 20).

On November 13, 2018, Plaintiff wrote a letter to the Governing Board, stating she was fearful of retaliation from "[Superintendent] Lynnette Michalski, Scott Tomlinson and Floyd Ashley[4] since filing my restraining order against Scott Tomlinson." (Doc. 29-3 at 2).[5] The letter does not detail what actions by Mr. Tomlinson generated the restraining order, but states that Superintendent Michalski "will pass me in the hallway and will not even acknowledge me as a person;" and that "she has also instructed the human resources employees not to engage in conversations with me." (*Id.*) She states that "[t]his makes my job very difficult because HR and Payroll must communicate to compensate employees correctly," and to her "this is an indirect form of retaliation." (*Id.*)

---

[4] Floyd Ashley is Mr. Tomlinson's uncle and a school board member.

[5] Plaintiff did not provide a copy of the restraining order or any details about it.

- 4 -

On November 15, 2018, Plaintiff was alleged to have assisted two Board members and a former employee "attempt to have Superintendent Michalski placed on administrative leave without authorization." (Doc. 29-2 at 70). On November 29, 2018, the District placed Plaintiff on paid administrative leave until she resigned on May 3, 2019. (*Id.* at 79). She started a new job at Sandia Resort on April 29, 2019. (*Id.* at 3).

A year later, in July of 2020, she filed this Complaint, alleging that the District violated her Title VII rights.

## II.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## III. Discussion

"Title VII prohibits employment discrimination based on any of its enumerated grounds: 'race, color, religion, sex, or national origin.'" *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting 42 U.S.C. § 2000e–2(a)(1)). Sexual harassment is "a species of gender discrimination" and falls into two major categories: hostile work environment and *quid pro quo*. *Id.* "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Id.* "[E]mployees who are subject to adverse employment actions because they lodged complaints of sexual harassment can raise a retaliation claim under Title VII." *Id.*

Defendant argues it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff "conceded she is not claiming to have been discriminated against based on any protected classification" and she "does [not] claim or have evidence that the District treated her differently than a similarly-situated employee who was not in the same protected class as [her]." (Doc. 29 at 6). Even if Plaintiff had made out a prima facie case of retaliation, Defendant claims it has shown a legitimate reason for changing the bookkeeper job to part-time. (*Id.* at 9). Defendant thus requests the Court grant judgment as a matter of law on Plaintiff's complaint in its entirety. (*Id.* at 10).

In her Response, Plaintiff argues she has raised a viable hostile work environment claim, arguing she was subjected to sexual harassment from Mr. Tomlinson's text messages and that the District's response was inadequate. (Doc. 36 at 6). Plaintiff does not address or otherwise respond to any of Defendant's retaliation arguments. (*Id.* at 2–9).

### 1. Retaliation Claim

Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because he has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing" or "opposed" a practice that Title VII forbids. *See*

42 U.S.C. § 2000e–3(a); *see also Scott v. Mabus*, 618 F. App'x 897, 901 (9th Cir. 2015). To present a prima facie case of retaliation, a plaintiff must show (1) "involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). The burden of production then shifts to the employer to present legitimate reasons for the adverse employment action. *Id.* If the employer carries this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. *Id.* Only if plaintiff proves a pretext will the case proceed beyond the summary judgment stage. *Id.* Defendant argues Plaintiff cannot show any of the three elements for her prima facie case.

### A. Protected Activity

Plaintiff does not address Defendant's retaliation arguments in her Response. Plaintiff seems, however, to argue that she engaged in protected activity when she complained to Mr. Cooper about Mr. Tomlinson's text. (Doc. 36-2 at ¶ 4). A protected participation activity must be made within a formal EEOC investigation, proceeding or hearing. *See* 42 U.S.C. § 2000e–3(a) (defining participation as when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). Defendant argues Plaintiff failed to demonstrate she engaged in any protected activity because the investigation to which section 2000e–3 refers does not include an employer's internal investigation, as distinct from an investigation by an official body authorized to enforce Title VII. (Doc. 29 at 7). Defendant thus argues that although Superintendent Michalski interviewed Plaintiff during the investigation of Mr. Cooper's complaint about Mr. Tomlinson, her participation was not protected activity because it was internal and did not include a proceeding in conjunction with or after the filing of a formal charge with the EEOC. (*Id.*) Plaintiff did not contact the EEOC and therefore she did not engage in any protected participation activity that could have caused any of the alleged adverse actions during her employment. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (noting that "[a]ccusations

made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril").

Plaintiff also testified that she experienced "retaliation because of association" with Mr. Cooper. (Doc. 29-2 at 59). But even assuming the relationship between Mr. Cooper and Plaintiff was sufficient for an associational discrimination claim, Mr. Cooper also did not engage in a protected activity. Plaintiff has therefore not met her burden of showing a genuine dispute of fact exists as to her engagement in any protected activity to defeat summary judgment.

### B. Adverse Action

Even if Plaintiff could establish that she engaged in protected activity, she fails to meet her burden of establishing conduct that constitutes "adverse action." "An action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Brooks*, 229 F.3d at 928 ("only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation").

First, the Court finds as matter of law that Plaintiff's subsequent move to an unclean workstation does not constitute an adverse action substantiating a Title VII claim. *See Blackburn v. Washington Dep't of Soc. & Health Servs.*, 611 F. App'x 416, 417 (9th Cir. 2015) (finding "*de minimis* change in work assignments does not constitute an adverse employment action"). The Court further finds Plaintiff failed to meet her burden of showing that the District's change of her original bookkeeper position to part-time is an adverse action. Although a reduction in work hours can constitute an adverse action, *Ramsey v. City of Philomath*, 182 Fed. Appx. 678, 680 (9th Cir.2006), Defendant has produced evidence showing the change was to conserve District resources. (Doc. 29-4 at ¶ 3). Plaintiff provides no evidence that suggests the change to conserve District resources was a pretext. Moreover, Plaintiff does not dispute that Superintendent Michalski wanted Plaintiff to retain a full-time position, whether it was one full-time position or two part-time positions that equaled a full-time position. (Doc. 29-2 at 46; 49). Finally, in her letter

to the Governing Board, Plaintiff complains that Superintendent Michalski "will pass me in the hallway and will not even acknowledge me as a person;" and that "she has also instructed the human resources employees not to engage in conversations with me." (Doc. 29-3 at 2). She states that "[t]his makes my job very difficult because HR and Payroll must communicate to compensate employees correctly," and to her "this is an indirect form of retaliation." (*Id.*) But "ostracism suffered at the hands of coworkers [does] not constitute an adverse employment action." *Brooks*, 229 F.3d at 929. Accordingly, the Court finds none of the conduct at issue here constitutes an adverse employment action.

### C. Causal Link between Protected Activity and Adverse Action

Even if Plaintiff had evidence of protected activity and an adverse employment action, Plaintiff fails to show any causal relationship between the protected activity and the adverse action. Plaintiff received her grant position after she filed her complaint with Mr. Cooper, but she quit the position on her own volition. (Doc. 36-2 at ¶ 15). Her grievances included an unclean workspace and lack of dual monitors. (*Id.* at ¶ 18). She did not show, however, that the uncleanliness or the lack of monitors were because of the complaint she filed. To the contrary, during her deposition, Plaintiff conceded that she was told the District would order her dual monitors but she quit before they were received. (Doc. 29-2 at 65). The Court therefore finds Plaintiff failed to establish a causal link between her protected activity and the alleged adverse employment actions.

Because the Court finds Defendant's arguments meritorious and the facts underlying them undisputed, the Court finds Plaintiff failed to present a prima facie case of retaliation. *See* Fed. R. Civ. P. 56(e)(2); *see also Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 900 (9th Cir. 2021) (finding plaintiff pointed to no specific evidence disputing the fact so the court "deem[ed] that fact undisputed"). The Court therefore finds summary judgment is appropriate on this claim.

### 2. Hostile Work Environment Claim

As an initial matter, Defendant argues the Court should not consider Plaintiff's hostile work environment claim, distinct from Plaintiff's retaliation claim, because it was

not alleged in the Complaint, and it would be prejudicial to allow Plaintiff to raise a new "claim" in response to a summary judgment motion. (Doc. 37 at 2).

To be sure, "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (internal citation and quotation omitted). Plaintiff's Complaint, however, alleges she was discriminated against "because of her sex" and states that she was "the victim of reprisal" after complaining of Mr. Tomlinson's sexual harassment. (Doc. 1 at ¶¶ 4, 26). Plaintiff's Complaint further alleges "[s]he reasonably believed that her job was in jeopardy if she did not resume the relationship with Tomlinson." (Doc. 1 at ¶ 13). Defendant's Answer explicitly acknowledges Plaintiff's allusion to a hostile work environment claim, stating "[t]o the extent that Plaintiff alleges she was subjected to a hostile work environment, the conduct about which she complains was not severe or pervasive and did not alter the terms and conditions of her employment." (Doc. 13 at ¶ 6). The Court therefore finds Plaintiff's Complaint can be plausibly construed as stating a hostile work environment claim. Nonetheless, the record plainly shows Plaintiff failed to establish that she was subjected to a hostile work environment.

When evaluating a claim of sexual harassment based on a hostile work environment, the Court must determine: "whether the plaintiff has established that she [] was subjected to a hostile work environment, and whether the employer is liable for the harassment that caused the environment." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (citation omitted).

To prevail on her hostile work environment claim, Plaintiff must show "1) she was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Id.* (citation omitted). A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (citation

omitted). For the third element, to determine whether an environment is sufficiently hostile or abusive, the Court looks "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted); *see also Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995) (noting that hostility is measured based on the totality of the circumstances). Whether the conduct is sufficiently severe and pervasive to constitute sexual harassment is a question of law. *Id.*

"Not every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). But "repeated derogatory or humiliating statements" can constitute a hostile work environment. *Id.* For example, in *Hacienda Hotel*, the court found plaintiffs had demonstrated sufficiently "severe or pervasive" harassment by demonstrating that one supervisor "repeatedly engaged in vulgarities, made sexual remarks, and requested sexual favors" while another supervisor "frequently witnessed, laughed at, or herself made these types of comments." 881 F.2d 1504, 1515 (9th Cir. 1989).

Viewing the evidence in the light most favorable to Plaintiff, the Court must assume she found Mr. Tomlinson's texts subjected her to verbal conduct of a sexual nature and that those messages became unwelcome at some point. Thus, for present purposes, the first two elements are satisfied. Plaintiff's sexual harassment claim collapses, however, on the third element, which is not addressed in her Response. The record simply lacks evidence that Mr. Tomlinson's text messages created "an abusive working environment." *Little*, 301 F.3d at 966. Defendant argues the text messages Plaintiff provides show "two people talking about their relationship and other matters late at night and on weekends, not during working hours." (*Id.*) Plaintiff does not make specific arguments to support her hostile workplace claim in her Response; she merely inserts a copied and pasted version of her declaration into the Response. The Court's review of Plaintiff's declaration confirms that it contains no statements that support a hostile work environment claim. (Doc. 36 at 4–7).

With regard to the subjective component as to whether Mr. Tomlinson's conduct was sufficiently severe or pervasive, Plaintiff states she "felt pressured by the constant texts from the Chairman of the School Board [and] believed that her job was in jeopardy if she did not resume the relationship with Tomlinson." (Doc. 36-2 at ¶ 9). The pressure Plaintiff felt to resume her relationship with Mr. Tomlinson in order to keep her job satisfies the subjective component of the hostile work environment claim. *Fried*, 18 F.4th at 652 (finding plaintiff satisfied the subjective component of the hostile work environment claim because plaintiff described feeling "absolutely horrible" and "uncomfortable" while performing a pedicure on a customer who made sexual propositions to him).

Considering the totality of the circumstances, the Court finds that two inappropriate incidents of texts from Mr. Tomlinson, during a series of messages about him and Plaintiff's relationship, would not have created a work environment that a reasonable person would find objectively hostile. *Fuller*, 47 F.3d at 1527. Here, Plaintiff received texts on two occasions, outside of working hours, where Mr. Tomlinson expressed continued affection for Plaintiff. The rash of texts may have been unwelcomed. But the comments are not analogous to the supervisor in *Hacienda Hotel*, who "threatened . . . to fire her if she did not submit to his sexual advances" while another supervisor laughed and herself made similar comments. 881 F.2d at 1515. Indeed, these messages were sent late in the evening and did not reference work or suggest retaliatory conduct if Plaintiff did not return Mr. Tomlinson's affections. *See Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 630 (6th Cir. 2013) (affirming district court's finding that occasional inappropriate text messages, such as telling plaintiff she was his "soul mate," coupled with her supervisor's unwelcome advances at work, were not so severe or pervasive that an objectively hostile environment was created). Absent further evidence, the Court finds no reasonable juror could conclude the text messages were sufficiently severe or pervasive to support a hostile work environment claim. Plaintiff has not established a prima facie case of sexual harassment based on a hostile work environment, and thus the Court finds this claim cannot survive summary judgment.

### A. Employer Liability

Having determined that Plaintiff failed to present sufficient evidence of a triable issue of whether she was subjected to a hostile work environment, the Court need not decide whether Defendant should be liable for the harassment. *See Little*, 301 F.3d at 968 (noting the court must consider defendant's liability if plaintiff "presented a triable issue of whether she was subjected to a hostile work environment"); *see also Fuller*, 47 F.3d at 1528 (same).

Even so, the Court rejects Plaintiff's argument that she has raised sufficient evidence showing the District's response to her complaint was inadequate. (Doc. 36 at 8). Although an employer is liable under Title VII only for "its own" acts, "it is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about." *See Fried*, 18 F.4th at 647. The proper focus for the hostile work environment claim is the employer's response to the coworker's or third party's conduct. *Id.* at 650. To determine whether an employer took immediate and corrective action, courts consider "whether the employer's response to known harassment subjected the employee to further harassment" and whether "the employer either ratifies or acquiesces in the harassment." *Id.* at 651.

The record is clear that the District took immediate and corrective action in response to the complaint filed by Mr. Cooper regarding Mr. Tomlinson's text to Plaintiff. On February 16, 2018, Plaintiff received a letter from the District's investigating counsel informing her it was "determined [that] Mr. Tomlinson's conduct was inappropriate and in violation of Governing Board Policy." (Doc. 37-2 at 3). In addition, counsel "met with Mr. Tomlinson, reviewed the applicable Board policies with him, and [] provided him with my recommendations for his future conduct." (*Id.*) Counsel further stated, "[a]s to [Plaintiff], I have recommended that Mr. Tomlinson not have any contact with you in his personal or professional capacity, and that he recuse himself from voting on any personnel decisions pertaining to you. (*Id.*) "I also recommend," counsel continues, "that you not

initiate any contact with Mr. Tomlinson." (*Id.*) Plaintiff received this letter less than a month after Mr. Cooper filed the complaint. She offers nothing to rebut these undisputed facts beyond conclusively stating this response was inadequate. (Doc. 36 at 9).

Although Plaintiff attaches texts from Mr. Tomlinson that were sent after the District made its recommendations, nothing in the record indicates that the District had notice of these subsequent communications, at least until November, 2018, when Plaintiff says she sent a letter informing the District she feared reprisal as a result of obtaining a TRO against Mr. Tomlinson. (Doc. 29-3 at 2). But the basis for any TRO Plaintiff obtained against Mr. Tomlinson is not before the Court, and thus, cannot be the basis for any alleged ratification or acquiescence to Mr. Tomlinson's behavior following his March 2018 texts to Plaintiff. Plaintiff has therefore not met her burden of showing a dispute of fact exists as to the District subjecting her to further harassment such that it altered Plaintiff's work environment. *See Little*, 301 F.3d at 967 (noting courts consider whether Defendant's "actions reinforced rather than remediated" the sexual assault and whether Defendant "allowed the sexual assault's effects to permeate [plaintiff's] work environment and alter it irrevocably"). Defendant promptly investigated Mr. Cooper's complaint, and recommended Plaintiff and Mr. Tomlinson cease communication. (Doc. 37-2 at 3). Plaintiff admitted in her deposition that she unblocked Mr. Tomlinson because she wanted "to see what he was saying or what he would say to me." (Doc. 29-2 at 44). Plaintiff's decision to unblock him and continue to communicate arguably undermines the District's corrective action. In any event, the Court finds no reasonable jurors could find that Defendant condoned Mr. Tomlinson's conduct, and thus the Court finds this claim cannot survive summary judgment. *See Fried*, 18 F.4th at 652 (finding "[r]easonable jurors could decide that [Defendant's] manager condoned the customer's conduct and conveyed that sexual harassment would be tolerated in the salon because she took no action to stop it— such as requiring the customer to leave the premises immediately.").

### IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment

on Plaintiff's Complaint in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 29) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 13th day of June, 2022.

Honorable Diane J. Humetewa
United States District Judge